187 So. 468

**POUND v. GAULDING.**

**7 Div. 526.**

Supreme Court of Alabama.

March 16, 1939.

388

London & Yancey, Geo. W. Yancey, Fred G. Koenig, Sr., and Frederick Koenig, Jr., all of Birmingham, for appellant.

Longshore & Williams and Merrill, Jones & Merrill, all of Anniston, for appellee.

390

GARDNER, Justice.

Plaintiff was in defendant's employ as a carpenter, and while engaged in his work on a scaffolding, under the direction of one Miller who had superintendence over him, the scaffolding gave way by reason of insufficient supports or braces, resulting in plaintiff's fall and consequential injuries.

Plaintiff's suit (counts 2 and 3, upon which the case was tried) is based upon subsections 2 and 3 of section 7598, Code 1923 (Employers' Liability Act), relating to the negligence of superintendent Miller.

■ Conceding for the moment the applicability of the Employers' Liability Act, we find no ground of demurrer sufficiently specific (Section 9479, Code 1923; Gulf States Steel Co. v. Carpenter, 205 Ala. 162, 87 So. 580) pointing out any defect therein, and, indeed, we do not understand any serious argument is advanced against any ruling on the demurrer in this respect. Additional grounds of demurrer were interposed, however, challenging the sufficiency of these counts upon the theory the Employers' Liability Act (Code 1923, § 7598 et seq.) had been superseded by our Workmen's Compensation Act (Code 1923, § 7534 et seq.), and that any injuries sustained by an employee are presumed to come under the latter act. Davis & Son v. Ruple, 222 Ala. 52, 130 So. 772; Kaplan v. Sertell, 217 Ala. 413, 116 So. 112.

■ This is of course the general rule. But we think the averments of these counts suffice to present an exception thereto. They disclose that at the time plaintiff sustained his injuries he was engaged as a carpenter, assisting in the construction of a building at Fort McClellan, to be used by the United States government as part of its armory, arsenal or fort; that Fort McClellan is located near Anniston, in Calhoun County, Alabama, and was purchased by the United States in 1918, and prior to the passage of the Workmen's Compensation Act, but at a time when the Employers' Liability Act, upon which this suit is founded, was in full force and effect; that said building and fort are included within the provisions of section 1505 of the Code of 1923. A reference to the Code provision discloses that the State of Alabama has ceded to the United States jurisdiction, in general terms of course, over this property, and the following section (section 1506) is to the effect the jurisdiction ceded continues so long as the United States remains the owner of the land, and shall be exclusive except for the service of process issued out of the courts of Alabama. It is the rule also that acceptance of the cession to the United States is evidenced by its purchase of the land and may be presumed. 65 Corpus Juris 1258; Atkinson v. State Tax Commission of Oregon, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621; Bowen v. Johnston, 59 S.Ct. 442, 83 L.Ed. —; Webb v. J. G. White Engineering Corp., 204 Ala. 429, 85 So. 729.

■ Nothing to the contrary appearing, therefore, exclusive jurisdiction has been

ceded, as to Fort McClellan, to the United States government. Such being the situation, it is the generally accepted rule that the municipal laws of the State, except insofar as they are inconsistent with the laws of the United States, remain in full force until abrogated by the United States. But this includes only such laws as are in effect at the time of the cession. And in the instant case, under this rule, the Employers' Liability Act remained in force. But the decisions are uniform to the effect that new enactments by the legislature of the ceding state, after the cession, do not take effect in the ceded area. Vilas v. Manila, 220 U.S. 345, 31 S.Ct. 416, 55 L. Ed. 491; Employers' Liability Ass'r Corp. v. Dileo, Mass., 10 N.E.2d 251.

Under this recognized principle, therefore, the Workmen's Compensation Act of this State, having been enacted after the cession of this territory to the United States, did not take effect therein.

Defendant insists, however, that Congress, by the Act of February 1, 1928 (16 U.S.C.A. § 457) gave effect to our Workmen's Compensation Act. This statute reads as follows: "In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be."

But we are of the opinion the decision of the Supreme Court of the United States in Murray v. Joe Gerrick, 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821, 92 A.L.R. 1259, is a refutation of this argument. In that case the court had under consideration the Workmen's Compensation Act of the state of Washington; and we are not unmindful of the defendant's ingenious argument as to the points of differentiation between the Washington statute and our own (71 Corpus Juris 226, under the heading "classification"), and the analysis of the Gerrick case in the light of these differences. We are persuaded, however, that these distinctions do not form the bases of that decision. Rather, we think, it is rested upon the broad foundation of the nature of the Workmen's Compensation statutes, which are sui generis, and are not actions at law in the sense of the cited federal statute. Workmen's Compensation statutes create rights and remedies and procedure all their own. Employers' Liability Ass'r Corp. v. Dileo, Mass., 10 N.E. 2d 251. They are based on a new theory of compensation distinct from the previously existing theories of damages (71 Corpus Juris 232), and are not rested upon any theory of wrongful conduct or neglect on the part of the employer. 71 Corpus Juris 235; Alaska Packers Ass'n v. Industrial Acc't Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044.

But the above noted federal act discloses in its opening sentence that it has application only where "neglect or wrongful act of another" is involved. We are of the opinion that a careful study of the Gerrick case, supra, is persuasive that the court interpreted the federal statute of 1928 as having no relation to Workmen's Compensation Acts. And it is clear enough that Congress so interpreted the decision, as by the Act of June 25, 1936 (40 U.S.C. A. § 290) specific and emphatic recognition was given Workmen's Compensation laws of the several states as applicable in territory ceded to the United States, which lies within the exterior boundaries of any state.

Our Workmen's Compensation Act having been passed subsequent to the acquisition of this territory by the United States, and its exclusive jurisdiction therein, has no force in such territory. Murray v. Gerrick, supra. Plaintiff's injuries were sustained prior to the passage by Congress of the Act of June 25, 1936, and it is not seriously insisted that this Act has any influence in the instant case. Employers' Liability Ass'r Corp. v. Dileo, supra; O'Hara's case, 248 Mass. 31, 142 N.E. 844.

Defendant further insists that upon the principles of conflict of laws the complaint was subject to demurrer. The complaint discloses the injuries were sustained in the ceded territory of Fort McClellan. So far as concerns the question of conflict of laws, the ceded territory is to be considered upon the same basis as if the accident had occurred in another state.

So considered, plaintiff replies that where an injury is shown to have occurred in another jurisdiction or state, the presumption obtains that the liabilities, obliga-

tions and responsibilities of the parties are to be determined by the place where the wrong was committed. And this is the generally accepted rule. Alabama G. S. R. Co. v. Carroll, 97 Ala. 126, 11 So. 803, 18 L.R.A. 433, 38 Am.St.Rep. 163; Caine v. St. Louis & S. F. R. Co., 209 Ala. 181, 95 So. 876, 32 A.L.R. 793; Western Union Tel. Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457.

But defendant answers that compensation statutes are founded on contract, and where accepted by the parties, the act becomes an integral part of the contract of employment. Falvey v. Sprague Meter Co., 111 Conn. 693, 151 A. 182; State v. Missouri Workmen's Compensation Comm., 320 Mo. 893, 8 S.W.2d 897; Pederzoli's case, 269 Mass. 550, 169 N.E. 427. That presumably the contract of employment was made with reference to and subject to the provisions of our Workmen's Compensation statute,—section 7547, Code 1923, —and that recovery may be had though the injury occurred outside the State. Section 7540, Code 1923; Alexander v. Movietonews Inc., 273 N.Y. 599, 7 N.E.2d 712; Lynch's case, 281 Mass. 454, 183 N.E. 834, 86 A.L.R. 285; State ex rel. Loney v. Industrial Acc't Board, 87 Mont. 191, 286 P. 408; Employers' Liability Assur. Corp. v. Dileo, Mass., 10 N.E.2d 251.

The Texas court in Texas Employers' Ins. Ass'n v. James, Tex.Sup., 118 S.W.2d 293, in reference to injuries sustained outside the state, limits recovery under the Workmen's Compensation statute of that state to accidents arising in work outside the state which is incidental to work for which he was employed within the state.

Interesting discussions of kindred questions to those considered by the Texas court are to be found in Alaska Packers Ass'n v. Industrial Acc't. Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044, and Bradford Electric Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696. But the exigencies of this case do not require any extended consideration of these questions.

■ Whatever extra-territorial effect given our Workmen's Compensation statute in section 7540, Code, is rested upon the establishment in this State of the relationship of employer and employee. The language of this section in this respect is, "if the contract of employment was made in this State."

■ Here the complaint discloses an injury in territory ceded to the federal government wherein our State Employers' Liability Act is in force, and our Workmen's Compensation Act was not in effect. It does not disclose on its face where the contract of employment was entered into. If, therefore, upon any theory of conflict of laws or otherwise, plaintiff is not entitled to recover, we think this was defensive matter to be set up and established by defendant. Such in effect was the holding of this Court in St. Louis-San Francisco R. Co. v. Carros, 207 Ala. 535, 93 So. 445, and such was the course pursued by defendants in Webb v. J. G. White Engineering Corp., 204 Ala. 429, 85 So. 729, Alaska Packers Ass'n v. Industrial Comm., 294 U. S. 532, 55 S.Ct. 518, 79 L.Ed. 1044, and United States Casualty Co. v. Hoage, 64 App.D.C. 284, 77 F.2d 542.

As to the matter of pleading, it may be conceded defendant met the burden in this respect under the plea of the general issue by consent to bring in all matter which would require special pleading. But as to the proof defendant offered nothing in this regard.

The decision of the Massachusetts court in Employers' Liability Ass'r Corporation v. Dileo, supra, as to this question is much in point. The following excerpt from the opinion in that case is applicable here: "In Lynch's Case, 281 Mass. 454, 183 N.E. 834, 86 A.L.R. 285, we held that where the contract of employment was made in this Commonwealth the extraterritorial provisions of our act (G.L.(Ter.Ed.) c. 152, § 26) became a part of the contract, so that our act applied in case of injury on Federal territory, as it would in case of injury in another State. There is no room for the operation of that principle in the present case, where the contract of employment was made on Federal territory and the injury was received there. So far as we are aware it has never been held that recovery can be had under the compensation act of a state when the contract of employment was not made in that State and the injury did not occur there. Beale, Conflict of Laws, § 401.1. Am.Law Inst. Restatement: Conflict of Laws, § 400." [10 N.E.2d 254.]

Defendant was a "citizen contractor," to use the language of his superintendent Miller, working citizens and not soldiers, and was erecting buildings at Fort McClellan for the federal government. So

far as here appears this was defendant's sole construction work at that time. The work was being done only at this fort, and if the proof is to be considered as silent upon the question as to the place where the contract of employment was entered into, then the burden of proof resting upon defendant in that regard, would suffice to deny to defendant the affirmative charge requested upon a contrary theory. But the case upon its merits as to this question need not rest upon the matter of the burden of proof.

The evidence discloses without conflict that plaintiff worked only by the day, and his wages were so much per hour. Plaintiff was to report to the superintendent, Miller, every morning for work, and he so reported the morning of his injury. Miller testifies "this was absolutely a day job," and plaintiff's testimony is to like effect. When plaintiff quit his work the afternoon just preceding his accident the following morning, he was under no contractual obligation to return, nor was defendant under any contractual duty to employ him. True, he was paid at the end of the week, but this was a mere matter of convenience. No one contends it was a contract of hire by the week. On the contrary, the hiring was by the day, and he was to report to the superintendent each morning. And the testimony of the witness Hollingsworth as to his work for defendant, and when plaintiff "hired on" had some tendency to show the employment was there at the fort. If the superintendent, on the morning of plaintiff's injury, when he reported for work, had instructed plaintiff there was none for him, it is clear enough plaintiff would have no legal cause for complaint.

We think, therefore, that the jury could very reasonably infer from the proof that there was in reality a new hiring each day. Altman v. N. Dakota Workmen's Comp. Bureau, 50 N.D. 215, 195 N.W. 287, 28 A.L.R. 1337.

And if the jury could so reasonably infer it follows as of course defendant was not due the affirmative charge, as here argued, for if the contract of employment was at Fort McClellan, and the work done there, no question of conflict of laws was involved, as we have previously indicated, and as the opinion in the Dileo case, supra, discloses.

Nor was the defendant due the affirmative charge upon the theory there was no evidence tending to show the negligence of the superintendent, Miller. Quoting from Miller's testimony: "I will admit that it was part of my job around there to see that the work was carried on in as safe manner as possible. * * * Thai that was a part of my job to see that things were properly cleaned up and that the scaffolds were properly braced. The morning Mr. Gaulding was hurt, I did not go up there and make an inspection of the scaffold."

That the scaffold was not properly braced, and that its fall was due to that fact is established by the undisputed proof. Plaintiff did not build the scaffold or assist therein, and merely assumed it was entirely safe when Miller, the superintendent, ordered the use of it so as to complete the job. The jury could reasonably infer that an inspection by Miller would readily have disclosed the insufficient support, and that more than one brace must have been gone to cause the scaffold to fall as it did. Indeed, the jury might well infer that Miller gave little attention to the scaffold, and considered the matter one of trivial character. "I absolutely treated this occurrence as one of the every day common * * * I did not go up there and see what was the matter with the scaffolding, but I couldn't tell you now anything about it. * * * I had no occasion to examine these scaffolds after the brickmasons left. * * * I don't say that I saw it exactly built and put in there. * * * That was a part of my job to see that things were properly cleaned up and the scaffolds correctly braced. * * * I never saw the scaffold any more that was supposed to have fallen * * * I never saw the scaffold, in fact, these little accidents that way." His testimony further tends to show he knew the scaffold was to be removed when the brickmasons finished their work. There are other statements of the witness Miller indicating he saw the scaffold and that it was properly constructed. But any conflicting statements were for the jury's determination. Mobile & Ohio R. Co. v. Hedgecoth, 215 Ala. 291, 110 So. 44.

Under the proof, and under Miller's own admissions, it was his duty to make inspection in anticipation of any danger, and the jury might well infer from the evidence that he omitted the discharge of this duty, and was of consequence guilty of negligence in this respect.

394

The case is similar in many particulars to that considered in Tennessee Coal & Iron Co. v. Spicer, 206 Ala. 141, 89 So. 293, and we view that authority as giving full support to the theory that a jury question was here presented, and the affirmative charge properly refused defendant as to either count 2 or count 3.

We have quoted enough of Miller's testimony, we think, to disclose that the jury might reasonably infer that Miller in fact gave to this scaffolding little attention and very meager inspection, though it was admittedly his duty to see to the matter of safety.

 We conclude also that it was for the jury to determine whether or not the scaffold was in fact in safe condition the evening before. Then too the jury could infer that Miller may have anticipated the scaffolding would be in process of being dismantled after the brickmasons had finished. In the light of his duty of inspection, and all the facts and circumstances herein briefly outlined, there was no error in refusing charge 41, requested by defendant.

Moreover, the defendant was given all instructions upon the matter of negligence of Miller, both in written given charges (particularly charges 36 and 40) and in the oral charge covering all phases of the question; and the refusal of this charge, even if considered correct, could in no event justify a reversal of the cause.

Defendant further contends a new trial should have been granted upon the theory the verdict was contrary to the instructions of the court, as found in charges 36 and 40, given at his request. The substance of these charges was only to the effect that if the scaffolding became unsupported by the intermeddling of some third person, which could not have been anticipated or prevented by a reasonably prudent superintendent, defendant would not be liable.

There was ample evidence to support the verdict, irrespective of any such question, and the finding of the jury was not therefore contrary to these charges.

These observations are with equal force applicable to given charge 14.

Numerous charges relating to the matter of negligence of the superintendent were given for the defendant, and the oral charge of the court contained much of the same character,—all of which was entirely reconcilable with these charges. If they were more favorable to defendant than was his due, under these circumstances the action of the court in giving them presents no valid reason for a new trial. Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122; Southern R. Co. v. Beaty, 212 Ala. 608, 103 So. 658.

The suggestion of a variance between the averments of count 2 and the proof is without merit, and needs no discussion.

The case was one peculiarly for the jury's determination, and we see no justification for a disturbance of the verdict as contrary to the great weight of the evidence.

We have considered the several assignments of error argued in brief for appellant, and conclude there is no reversible error apparent.

It follows that the judgment is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.