(No. 34405.—)

FRED THIELE *et al.*, Appellees, *vs.* THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

John C. Melaniphy, Corporation Counsel, of Chicago, (Sydney R. Drebin, and Harry A. Cooper, of counsel,) for appellants.

Antonow & Weissbourd, of Chicago, (Joseph P. Antonow, Bernard Weissbourd, Ernest Greenberger, and Richard A. Siegal, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

The plaintiffs operate a food store in an apartment building in the Hyde Park area on the south side of Chicago. Exclusive legislative jurisdiction over the land on which the building stands has been ceded to the United States by the State of Illinois, and the question is whether

under the Federal constitution the licensing and zoning ordinances of the city apply to the plaintiffs' activities.

The land in question was acquired by the United States by condemnation. At that time a statute of Illinois, since repealed, ceded to the United States exclusive jurisdiction over land that it acquired within Illinois, reserving only the right to serve civil and criminal process. (Ill. Rev. Stat. 1943, chap. 143, pars. 23-25; see Laws of 1953, p. 1058.) After the United States secured title, the Secretary of War advised the Governor of Illinois that the United States accepted the ceded jurisdiction.

Pursuant to congressional authority, the Secretary of the Army thereafter leased the property to Herbert S. Greenwald for a term of 75 years at a rental of $100 a year. By the terms of the lease the lessee undertook to build and maintain a housing project of 253 units in accordance with plans approved by Federal authorities. The lease provides for priority of occupancy by military and civilian personnel of the Army, Navy, Marine Corps, or Air Force, but in default of such occupancy the lessee is authorized to lease to other persons.

The plans for the building included space for a food store. The space so provided was leased by Greenwald to the plaintiffs. After the plaintiffs had been arrested for operating the food store without the license required by the city's ordinance, this action was instituted for an injunction restraining the officials of the city from enforcing its licensing, building and zoning ordinances against the plaintiffs in the operation of their food store. A decree for the plaintiffs was entered upon their motion for a summary judgment, and the city appeals.

The constitution of the United States gives the Congress power "To exercise exclusive Legislation * * * over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts * * * and other needful Buildings." (Art. 1,

sec. 8, clause 17.) The parties agree that exclusive juris-diction under this provision was vested in the United States when the Secretary of War notified the Governor of Illinois that jurisdiction was accepted. 40 U.S.C. 255.

Areas so situated are known as Federal enclaves, or, more picturesquely, as "Federal islands" within the States. They present many problems. Persons who reside in such an area, although they live within the borders of a State, are not regarded as its residents. Absent special legislation or intergovernmental agreement, they may not vote, hold pub-lic office or serve on juries, and their children are not en-titled to attend public schools. (U.S. Interdepartmental Committee For the Study of Jurisdiction over Federal Areas within the States, Report pt. 1, U.S. Govt. Printing Office, 1956; 101 U. of Pa. L.R. 124.) The Federal As-similative Crimes Act (18 U.S.C. 13) has made State criminal law applicable within the enclaves, but enforce-ment of that law is a Federal and not a State responsibility. (See, *e.g.*, *United States* v. *Unzeuta,* 281 U.S. 138; *Benson* v. *United States,* 146 U.S. 325.) By Federal statute State income, sales and use taxes have been made applicable within Federal enclaves. (4 U.S.C. 104-110.) There have been other similar accommodations. But State and local fire and police protection, garbage removal and other services are not available within Federal enclaves except by agreement, and even if there is agreement serious questions remain as to the status of State or municipal officers while performing these services.

The dominant fact in this case is that exclusive juris-diction over the area in question has been ceded by Illinois to the United States. The city argues, however, that juris-diction has been retroceded by the lease between the Secre-tary of the Army and Greenwald, and that the present plain-tiffs are bound by the provisions of that lease. We agree that the plaintiffs, as sublessees, are bound by the provisions of the lease between the government and Greenwald. But

we are unable to agree that the lease is effective to relinquish Federal jurisdiction. The clause relied upon is paragraph 7: "That the lessee shall comply with all applicable laws, ordinances and regulations of the State, County and municipality wherein the said demised premises are located, with regard to construction, sanitation, licenses or permits to do business, and all other matters."

There are several reasons why this provision of the lease does not vitalize the city's ordinances. The lease is a contract to which the city is not a party, and enforcement of its provisions is a matter between lessor and lessee. Even if the city might be regarded as a third party beneficiary, that status could hardly authorize it to invoke penal sanctions for the violation of its ordinances. Moreover, we are not aware that Congress has authorized the Secretary of War to retrocede any portion of the exclusive jurisdiction of the United States, and either action or authorization by Congress is essential to retrocession so long as the United States retains the land. Finally, it has been held that similar provisions in Federal contracts do not make local ordinances effective in areas over which the Federal government has exclusive jurisdiction. *State* v. *Blair,* 238 Ala. 377, 191 So. 237; *City of Birmingham* v. *Thompson,* 200 F.2d (5) 505.

The city correctly points out that the present lease is similar to that involved in *Offutt Housing Co.* v. *County of Sarpy,* 351 U.S. 253, and that both leases were made under the authority of the same Federal statutes. It was there held that the lessee's interest in a military housing project located in a Federal enclave was subject to local taxation. That decision was not based, however, upon the terms of the lease, but rather upon the ground that Congress had consented to State and local taxation. The court expressly stated that it was not holding that Congress had relinquished its exclusive jurisdiction over these areas. "We hold only that Congress, in the exercise of this power, has

permitted such state taxation as is involved in the present case." 351 U.S. at 260-1.

The city also strongly emphasizes that under the lease the title to the building is in Greenwald and that both Greenwald and the plaintiffs, his sublessees, are private individuals engaged in business for private profit. The affidavit of a city investigator, submitted in opposition to the plaintiffs' motion for summary judgment, is to the effect that plaintiffs do not restrict their sales to military personnel or civilian employees of the Federal government, but sell promiscuously to anyone who is willing to buy. These considerations may raise doubts as to the wisdom of the cession and acceptance of exclusive jurisdiction, but for our purposes they are irrelevant. Private operations within an area over which the United States has exclusive jurisdiction do not become subject to State or local regulation because they are private. *Collins* v. *Yosemite Park & Curry Co.* 304 U.S. 518; *Pacific Coast Dairy, Inc.* v. *Dept. of Agriculture of California,* 318 U.S. 285; *cf., Penn Dairies, Inc.* v. *Milk Control Com. of Pennsylvania,* 318 U.S. 261.

The city's remaining contention rests upon a principle of international law. When jurisdiction over territory is transferred from one sovereign to another, the laws of the old sovereign governing private rights, so far as they are not incompatible with those of the new, remain in effect until they are altered or repealed by the new sovereign. This principle has been applied to the relations between State and nation with respect to Federal enclaves. *Chicago, Rock Island and Pacific Railway Co.* v. *McGlinn,* 114 U.S. 542; *Arlington Hotel Co.* v. *Fant,* 278 U.S. 439; *James Stewart & Co.* v. *Sadrakula,* 309 U.S. 94.

The cases relied upon, however, show the limitations of the doctrine. They concerned disputes between private parties, and those disputes were held to be governed by the State law as it existed before the United States acquired

jurisdiction. None of them involved a direct assertion of governmental power by the superseded government, as does this case. More closely in point is *Collins* v. *Yosemite Park & Curry Co.* 304 U.S. 518. There California had ceded exclusive jurisdiction to the United States, reserving only the right to tax. California's Alcoholic Beverage Control Act contained regulatory provisions, and also imposed excise and license taxes. The excise taxes were sustained as to the company, which operated hotels, camps and stores in the park under contract with the Secretary of the Interior. But California's regulatory and licensing provisions were held to be unenforceable. The court said: "As there is no reservation of the right to control the sale or use of alcoholic beverages, such regulatory provisions as are found in the Act under consideration are unenforceable in the Park." 304 U.S. at 530.

The decree of the superior court of Cook County was correct and it is affirmed.

*Decree affirmed.*