On Applications for Rehearing

BRYAN, Justice.
U.S. Innovation Group, Inc., Scott Beh-rens, Jack Dombroski, Mike Evans, and John Emmert (collectively “the USIG defendants”) have petitioned this Court for a writ of mandamus directing the Madison Circuit Court (“the circuit court”) to dismiss the claims filed against them in separate actions by Judy A. Hawke and Carolyn Grimes. The USIG defendants argue that because the claims arose on Redstone Arsenal, which is a federal enclave[1] subject to exclusive federal jurisdiction, the circuit court does not have subject-matter jurisdiction over the claims. We deny the petitions.

Facts and Procedural History

In 1943, the State of Alabama ceded property in Madison County to the government of the United States, pursuant to Art. I, § 8, clause 17, of the United States Constitution,[2] and other relevant federal and State statutes. The deed for the ceded property, which included land for Red-stone Arsenal, was signed by then Governor Chauncey Sparks and provided, among other things, that the United States has “exclusive jurisdiction” over the land in-eluded in that deed. The deed provided further “[t]hat the jurisdiction so ceded shall not prevent the execution upon such lands of any process, civil or criminal, issued under the authority of this State, except as such process might affect the property of the United States thereon” and
“[t]hat the State of Alabama expressly reserves the right to tax all persons, firms, corporations, or associations now or hereafter residing or located upon said land; to tax the exercise by any person, firm, corporation, or association of any kind and all rights, privileges, and franchises upon said land; and to tax property of all persons, firms, corporations, or associations situated upon said land. The jurisdiction ceded is for the purposes of the cession, and none other, and shall continue during the time the United States shall be or remain the owner thereof and shall use such land for the purposes of the cession, and the State of Alabama expressly reserves the right to exercise over or upon any such land any and all rights, privileges, powers, or jurisdiction which may now or hereafter be released or receded by the United States to the State.”
In 2010, Jerry A. Grimes and James R. Hawke, Jr., were injured in an explosion while working on a project at Redstone Arsenal. Both men died as a result of their injuries. In December 2011, Grimes’s widow, Carolyn Grimes, in her individual capacity, as administratrix and personal representative of Jerry Grimes’s estate, and as a dependent survivor of *461 Jerry Grimes, filed a wrongful-death action against the USIG defendants, among others.[3] In February 2012, Hawke’s widow, Judy A. Hawke, in her capacity as administratrix and personal representative of James Hawke’s estate, also filed a wrongful-death action against the USIG defendants, among others.[4]
The wrongful-death actions were filed in the circuit court but were removed separately to federal court. The cases were remanded to the circuit court on the ground that the removals did not comply with the • procedural requirements of 28 U.S.C. § 1446. Two subsequent attempts were made to remove the cases to federal court on the basis of exclusive federal-court jurisdiction, but each time the federal courts refused the cases, finding that the circuit court had concurrent jurisdiction over the claims.
In October 2012, the circuit court consolidated the two cases. Just prior to the consolidation, the USIG defendants moved the circuit court to dismiss the claims in each ease, again arguing that federal courts have exclusive jurisdiction over claims arising on federal enclaves. The circuit court denied the motions and ordered production of certain requested discovery.
The USIG defendants filed, as to each case, a petition for the writ of mandamus directing the circuit court to dismiss the claims against them and declaring void the circuit court’s discovery orders. Those petitions were denied by separate orders of this Court. The USIG defendants applied for a rehearing in both cases, and those applications were granted. The petitions for the writ of mandamus were consolidated for the purpose of issuing one opinion.

Issue

The USIG defendants argue that this Court should grant their petitions for mandamus relief because, they argue, the federal courts have exclusive jurisdiction over claims arising on Redstone Arsenal and because “[t]he [circuit] court erred and abused its discretion, by granting [Grimes’s and Hawke’s] respective Motions to Compel discovery where it had no jurisdiction to do so.” Petitions, at 5-6.

Analysis

“A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.”
Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala.2001) (quoting Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000)).
The USIG defendants argue that they have a clear legal right to have the claims against them dismissed because, they argue, “the deed of cession for [Redstone] Arsenal unequivocally grants exclusive jurisdiction to the federal government” and, therefore, “no Alabama court has jurisdiction over the matter.” Petitions, at 6. The USIG defendants go on to argue that “the U.S. government enjoys exclusive jurisdiction over ‘all cases whatsoever’ which arise on Art. I federal enclaves.” Petitions, at 7.
In Surplus Trading Co. v. Cook, 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091 *462 (1930), the Supreme Court of the United States stated:
“[Article I, § 8, clause 17] says that Congress shall have power to exercise ‘exclusive legislation in all cases whatsoever’ over a place so purchased.... ‘Exclusive legislation’ is consistent only with exclusive jurisdiction. It can have no other meaning as to the seat of government, and what it means as to that it also means as to forts, magazines, arsenals, dockyards, etc. That no divided jurisdiction respecting the seat of government is intended is not only shown by the terms employed, but is a matter of public history. Why as to forts, magazines, arsenals, dockyards, etc., is the power given made to depend on purchase with the consent of the Legislature of the state if the jurisdiction of the United States is not to be exclusive and that of the state excluded?
“The question is not an open one. It long has been settled that, where lands for such a purpose are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction.”
The USIG defendants argue that “exclusive legislation” or “sole jurisdiction,” as discussed in Surplus Trading Co., necessarily includes exclusive adjudicative jurisdiction. They go on to argue that “[t]he language of the Constitution grants Congress ‘like Authority’ to the authority granted to Congress over the District of Columbia. Thus, the authority ceded by the State of Alabama ‘encompasses the full authority of government, and thus, necessarily, the Executive and Judicial powers as well as the Legislative.’ ” Petitions, at 9-10 (quoting Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 76, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).
However, “[exclusive ‘legislation’ has been construed to mean exclusive ‘jurisdiction’ in the sense of exclusive sovereignty.” Mater v. Holley, 200 F.2d 123, 123 (5th Cir.1952) (citing Surplus Trading Co., 281 U.S. at 652). In Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 481-82, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Supreme Court stated:
“Nothing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law. Ohio River Contract Co. v. Gordon, 244 U.S. 68 (1917). See 16 U.S.C. § 457 (personal injury and wrongful-death actions involving events occurring ‘within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State’ shall be maintained as if the place were under the jurisdiction of the State). Cf. Evans v. Common, 398 U.S. 419, 424 (1970) (residents of an area of exclusive federal jurisdiction within a State are ‘subject to the process and jurisdiction of state courts’). ‘The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe.’ The Federalist No. 82, p. 514 (H. Lodge ed. 1908) (Hamilton), quoted in Claflin v. Houseman, 93 U.S. [130], at 138 [ (1876) ]. State courts routinely exercise subject-matter jurisdiction over civil cases arising from events in other States and governed by the other States’ *463 laws. See, e.g., Dennick v. Railroad Co., 103 U.S. 11 (1881). Cf. Allstate Ins. Co. v. Hague, 449 U.S. 302 (1981). That the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State’s subject-matter jurisdiction.”
(Emphasis added.)
In Gulf Offshore Co., the Supreme Court addressed “whether federal courts have exclusive jurisdiction over suits under the Outer Continental Shelf Lands Act, 67 Stat. 462, as amended, 43 U.S.C. § 1331 et seq. (1976 ed. and Supp. Ill)” (“OCSLA”). 453 U.S. at 475. “OCSLA declares the Outer Continental Shelf to be an area of ‘exclusive federal jurisdiction.’ ” 453 U.S. at 479 (quoting 43 U.S.C. § 1333(a)(1)). The petitioner in that case argued that “the assertion of exclusive political jurisdiction over the Shelf evinces a congressional intent that federal courts exercise exclusive jurisdiction over controversies arising from operations on the Shelf.” 453 U.S. at 480. The Supreme Court rejected that argument, stating: “It is black letter law, however, that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action.” 453 U.S. at 479.
The Supreme Court went on to conclude that “nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction over personal injury actions arising under OCSLA.” 453 U.S. at 484. Thus, a grant of exclusive federal jurisdiction or sovereignty over the Outer Continental Shelf did not, by itself, indicate an intention to divest state courts of concurrent jurisdiction over claims arising on such lands. See Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507-08, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (“We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule.... ‘The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises ... (and) the result of these discussions has, in our judgment, been ... to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.’ ” (quoting Claflin v. Houseman, 93 U.S. 130, 136 (1876) (footnote omitted))).
Like OCSLA, the deed for Red-stone Arsenal granted the United States “exclusive jurisdiction” over the property included in the deed. However, nothing in the deed or in any other document brought to this Court’s attention indicates that the State intended its grant of exclusive federal jurisdiction or sovereignty over Redstone Arsenal to create exclusive federal-court jurisdiction or to oust the State courts of subject-matter jurisdiction of claims arising on that land. As noted previously, a grant of “exclusive federal jurisdiction” over land does not, by itself, indicate an intention to create exclusive federal-court jurisdiction of claims arising on that land. See Gulf Offshore Co., supra. See also Mater, 200 F.2d at 123 (“The Supreme Court has held that an action for *464 personal injuries suffered on a reservation under the exclusive jurisdiction of the United States ... may be maintained in a state court which has personal jurisdiction of the defendant.” (citing Ohio River Contract Co. v. Gordon, 244 U.S. 68, 72, 37 S.Ct. 599, 61 L.Ed. 997 (1917) (“[A]n action for personal injuries being in its nature transitory and susceptible of being brought in any jurisdiction in which the defendant may be impleaded, there is no foundation for the contention that the [state] court had no jurisdiction over the subject-matter of the suit.”))).
The USIG defendants argue that the Supreme Court’s rationale in Gulf Offshore Co. should not apply in this case because Gulf Offshore Co. did not involve claims arising on a federal enclave. However, the Supreme Court noted in Gulf Offshore Co. that “Congress rejected the Department [of Justice’s] premise that the Shelf is ‘not comparable to federally owned areas within a State.’ Section 1333(a)(1) rather provides that the federal laws apply to the Shelf ‘to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.’” 453 U.S. at 483 n. 9 (citations omitted). Thus, the analysis in Gulf Offshore Co. is apposite here.
The USIG defendants cite Surplus Trading Co., supra, United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761 (1930), and Fort Leavenworth R.R. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885), in support of their argument that the “jurisdiction of the federal government is exclusive of all state authority, which is completely ousted.” Petitions, at 10. However, neither Surplus Trading Co. nor Lowe addresses the jurisdiction of state courts over claims arising on federal enclaves. Instead, those cases address a state’s authority to assess and collect taxes on property located within a federal enclave. Those cases address limitations on state legislative jurisdiction rather than state-court adjudicative jurisdiction.
The USIG defendants’ reliance on Un-zeuta is similarly misplaced because that ease involves criminal charges brought against a defendant for a murder that allegedly took place on a right-of-way owned by a private company but located within a federal enclave. Congress has provided that in criminal matters “[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.” 18 U.S.C. § 3231. No criminal matters are at issue in this case. Thus, the Supreme Court’s decision in Unzeuta is inapposite here.
The USIG defendants cite Webb v. J.G. White Engineering Corp., 204 Ala. 429, 85 So. 729 (1920), Pound v. Gaulding, 237 Ala. 387, 187 So. 468 (1939), and State v. Blair, 238 Ala. 377, 191 So. 237 (1939), for the proposition that Alabama courts have declined jurisdiction over claims arising on federal enclaves in the past. However, the question at issue in Webb was “whether Congress had assumed jurisdiction over said territory and legislated so as to exclude plaintiff from a remedy under the state statutes, or given him instead a remedy for his alleged injuries and wrongs on which the suit may be maintained in a federal forum.” Webb, 204 Ala. at 431, 85 So. at 730. This Court determined that the claims in that case, which had arisen on a federal enclave, were within the purview of the federal Employees’ Compensation Act, 5 U.S.C. § 751 et seq., which provided an administrative remedy through the Employees’ Compensation Commission. Therefore, this Court concluded, the State circuit court did not have jurisdiction to address those claims.
From all that appears, however, no comparable federal administrative remedy has *465 been created for the claims at issue in this case. Instead, Congress has provided:
“In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.”
16 U.S.C. § 457. Webb is distinguishable in that regard.
Neither Pound nor Blair supports the USIG defendants’ requests for mandamus relief because this Court did not hold in either case, either expressly or by implication, that the State courts lacked subject-matter jurisdiction over the claims raised in those cases. Instead, this Court affirmed the judgments of the respective State circuit court in each case as to the underlying claims. See Pound, supra (affirming the Calhoun Circuit Court’s judgment based on a jury verdict in favor of a carpenter and against his employer for injuries suffered while doing work at Fort McClellan); and Blair, supra (affirming the Montgomery Circuit Court’s judgment holding that the appellee owed no state taxes on gasoline stored on Maxwell Air Force Base).
Finally, the USIG defendants cite Lord v. Local Union No. 2088, International Brotherhood of Electrical Workers, AFL-CIO, 646 F.2d 1057 (5th Cir.1981), and Corley v. Long-Lewis, Inc., 688 F.Supp.2d 1315 (N.D.Ala.2010), for the proposition that federal-court jurisdiction is exclusive unless the deed by which the land is ceded to the United States provides to the contrary. The USIG defendants also argue that the State knew how to reserve state-court jurisdiction when ceding land to the United States but that it did not do so in the deed for Redstone Arsenal. However, Lord and Corley involve issues related to the scope of exclusive federal legislative jurisdiction. Neither case provides, either implicitly or expressly, for exclusive federal-court jurisdiction over claims arising on federal enclaves. As noted previously, exclusive legislative or political jurisdiction is not synonymous with exclusive adjudicative jurisdiction. See Gulf Offshore Co., 458 U.S. at 481 (“Nothing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law.”).

Conclusion

The USIG defendants have not demonstrated that the circuit court lacks subject-matter jurisdiction over the claims alleged against them by Hawke and Grimes or that they have a clear legal right to have those claims dismissed. Our decision in this regard is dispositive of the USIG defendants’ request for mandamus relief from the circuit court’s discovery orders, which the USIG defendants argue were void because the court did not have jurisdiction over the wrongful-death actions. Therefore, we deny the petitions for the •writ of mandamus in these cases.
1120296 — PETITION DENIED.
1120297 — PETITION DENIED.
MOORE, C.J., and STUART, BOLIN, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.

. A "federal enclave” is "[t]erritory or land that a state has ceded to the United States.” Black's Law Dictionary 606 (9th ed.2009).

. Article I, § 8, clause 17, gives Congress power "[t]o exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia], and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.”

. Grimes’s complaint, as amended, also sought worker’s compensation benefits and included claims alleging breach of express and implied warranties.

. Hawke’s complaint also asserted claims under the Alabama Extended Manufacturer's Liability Doctrine and claims of breach of express and implied warranties.