## ATKINSON ET AL. *v.* STATE TAX COMMISSION OF OREGON ET AL.

No. 303.   Argued January 13, 1938.—Decided January 31, 1938.

*Mr. Howard P. Arnest* for appellants.

*Mr. Carl E. Davidson,* Assistant Attorney General, with whom *Mr. I. H. Van Winkel,* Attorney General, of Oregon, was on the brief, for appellees.

By leave of Court, *Attorney General Cummings, Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Arnold Raum* filed a brief on behalf of the United States, as *amicus curiae,* in support of appellees.

PER CURIAM.

This case presents the question of the validity of the personal income tax law of Oregon (Oregon Code 1930, c. XV, Title LXIX, §§ 69–1501 to 69–1538, as amended by Laws of 1933, c. 322 and 387 and by laws of 1933, Second Special Session, c. 31) as applied to the net income of the appellants derived from their work within the exterior limits of the State in the construction of the Bonneville Dam on the Columbia River under a contract with the United States. The contract was made in February, 1934, and the work was completed in that year. The tax was assailed upon the grounds (1) that it burdened the operations of the Federal Government and (2) that the area within which the work was done was within the exclusive jurisdiction of the United States. The Supreme Court of the State sustained the tax, 156 Ore. 461; 62 P. (2d) 13, 67 P. (2d) 161, and the contractors appeal.

With respect to the contention that the state law lays an unconstitutional burden upon the Federal Government, the case is controlled by our previous decisions. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514; *General Construction Co.* v. *Fisher,* 295 U. S. 715; *James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Silas Mason Co.* v. *Tax Commission,* 302 U. S. 186. In the two cases last mentioned the tax which was upheld was upon the gross income of the contractors. In *Metcalf & Eddy* v. *Mitchell, supra,* and *General Construction Co.* v. *Fisher, supra,* the tax was upon the net income.

As to territorial jurisdiction, it appears that the area within the boundaries of Oregon in which the work was

performed embraced (a) the bed of the Columbia River, where the main structural works are placed, and (b) Bradford island and a portion of the mainland.

The United States did not acquire title to the bed of the river. Upon this point the state court said (pp. 481–482):

"Section 60–1302, Oregon Code 1930 (Laws 1874, p. 10), grants to the governor of Oregon authority and power to convey to the United States title to land belonging to the state and covered by the waters of the United States, not exceeding ten acres in any one tract, as the site of a lighthouse, beacon or other aid to navigation, upon application made to him by a duly authorized agent of the United States, and further grants him authority 'to cede to the said United States jurisdiction over the same,' reserving, however, to the state the right to serve thereon civil or criminal process issuing under authority of the state. No application has been made to the governor of this state or to the legislature for conveyance of any part of the bed of either the north or south channel of the Columbia river within the project, or for cession to the federal government of jurisdiction over the same. . . .

"No authority has been called to our attention to the effect that the state of Oregon has in any way relinquished its sovereignty over the area occupied by the waters of Bradford slough and that part of the north channel of the Columbia river which is within the territorial limits of the state."

The case in this relation falls within the principle of our decision in *James* v. *Dravo Contracting Co., supra.* The question, we there said, was not one of the paramount authority of the Federal Government to have the work performed for purposes within the federal province. The title to the bed of the river was in the State. And, although subject to the dominant right of the Federal

Government, the servient title continued in the State which thus retained its territorial jurisdiction for purposes not inconsistent with the exercise by the Federal Government of its constitutional functions. See, also, *Silas Mason Co.* v. *Tax Commission, supra.*

The remaining question concerns the lands on Bradford island and the mainland which were purchased by the United States. Appellants rely upon the Oregon statute giving consent to the United States to purchase or otherwise acquire any land within the State "for the purpose of erecting thereon any needful public buildings" under authority of any act of Congress, and providing that the United States should have "the right of exclusive jurisdiction over the same," saving the authority of the State for the service of process. Oregon Code, 1930; § 60–1303.

In *Silas Mason Co.* v. *Tax Commission, supra,* we said that as a transfer of exclusive jurisdiction rests upon a grant by the State, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent. But we found no constitutional principle "which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests." The mere fact that the Government needs title to property within the boundaries of a State "does not necessitate the assumption by the Government of the burdens incident to an exclusive jurisdiction."

In this instance, the state court took the view that the Federal Government had not accepted and did not intend to exercise exclusive legislative authority over the lands which had been purchased for this project. The court said:

"The mere fact that there may be on the statute books of the state a general law, such as § 60–1303, Oregon Code 1930, consenting to the purchase of land by the

United States and granting to the national government the right to exercise exclusive jurisdiction thereover, does not imply that over all lands purchased by the national government in the state after the enactment of such law the state is divested *ipso facto* of sovereignty, and exclusive control over the acquired area is assumed by the federal government. In the instant case there is nothing to indicate that the federal government desires to exercise exclusive legislative jurisdiction over the land purchased by it within the Bonneville project. It would be somewhat inconsistent to assume that since it does not have such jurisdiction over the major part of the structures which are now being built, the federal government is seeking to exercise exclusive jurisdiction over that part of the works located on lands title to which it has acquired.

"The record discloses that the government officials in charge of the construction work required the contractors to come under the provisions of the workmen's compensation law of the state in which the work was to be performed. At the time the contract with the plaintiffs was entered into at least two states had held that their workmen's compensation laws were not effective on territory over which the federal government had exclusive jurisdiction: *Willis* v. *Oscar Daniels Co.,* 200 Mich. 30 (166 N. W. 496); *Murray* v. *Joe Gerrick & Co.,* 172 Wash. 365 (20 P. (2d) 591). On February 5, 1934, the Supreme Court of the United States affirmed the latter case. See 291 U. S. 315.

"The contract between the plaintiffs and the federal government was dated February 6, 1934. In view of those decisions it is reasonable to assume that the officials in charge of construction of the Bonneville dam on behalf of the federal government understood that the land included in the project was not under the exclusive legislative jurisdiction of the United States. Otherwise they

would not have required contractors to provide state workmen's compensation."

The contract between the Government and appellants is not in evidence but the record discloses, as stated by the state court, that the Government did not seek to exclude the State from all legislative authority, an exclusion which would have followed from an acceptance of a grant of "exclusive jurisdiction" with the sole reservation of the right to serve process. The enforcement and administration of the Oregon compensation law (see Oregon Code 1930, §§ 49–1801 to 49–1845), with which the contractors were required to comply, were incompatible with the existence of exclusive legislative authority in the United States.[1] If, however, exclusive jurisdiction, although offered, was not accepted by the United States, there is no warrant for the conclusion that the State did not retain its territorial jurisdiction over the area in question so far as its exercise involved no interference with the carrying out of the federal project. And as we have decided that there is no such interference through the enforcement of a tax such as is here assailed, we find no ground for overruling the decision of the state court.

The judgment is

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration and decision of this case.

---

[1] The purchases of the lands, here involved, were made by the Government, and the contract with the appellants was made and performed, prior to the enactment of the Act of Congress of June 25, 1936, 49 Stat. 1938, and we express no opinion as to the effect of that Act in relation to lands as to which exclusive jurisdiction had previously been granted to and accepted by the United States.