3 So.2d 9

## WESTERN RY. OF ALABAMA v. STATE.

### 3 Div. 342.

Supreme Court of Alabama.
June 13, 1941.

Rehearing Denied June 30, 1941.

Steiner, Crum & Weil, of Montgomery, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellee.

BOULDIN, Justice.

This cause presents this question: Was the compensation received by the Western Railway of Alabama from the United States Government for transporting the United States Mails during the year 1938 a part of its gross income in computing its net income subject to State Income Tax in Alabama?

The Western Railway of Alabama is a railway corporation organized under the laws of Alabama, owning and operating a railway between Selma, Alabama, and West Point, Georgia, as a common carrier of passengers and freight.

This corporation, without special contract, is required to transport the United States Mails, "under the conditions, and with the service prescribed by the Postmaster General" for which it shall receive "fair and reasonable compensation" from the United States. 39 U.S.C.A. § 541.

The reasonable compensation is to be determined by the Interstate Commerce Commission. 39 U.S.C.A. § 542.

"In carrying or transporting the United States mail, the Appellant, Western Railway of Alabama, retains full management, supervision and control of the railway line and the operation thereof, including the transportation of the cars in which said mail is carried, and performs such service by and through its own servants and employees, except that said railway company, with respect to the carrying or transporting of such mail, is required to comply with and observe the laws and rules and regulations duly adopted or promulgated by the United States or the Postmaster General relating to the transportation of United States mail. Such railway cars and trains used for such purpose are the property of the railway company."

"No part of the stock of Western Railway of Alabama is owned by the United States or any agency or department thereof."

Immunity from state income tax is claimed upon the ground that the transportation of the United States mails is a distinct function of the Federal Government, and that a railway corporation required by law to transport the mails is an agency of the Federal Government, engaged in a governmental function, and that the compensation paid by the government for such service is immune from a state income tax under the implied inhibition of the Federal Constitution first declared in M'Culloch v. State of Maryland et al., 4 Wheat. 316, 4 L.Ed. 579. We undertake no restatement of the full scope of the announcements in that famous decision by Chief Justice Marshall. The basis, and logical results of that decision, are best understood by reading that portion of the opinion dealing with the subject, beginning on page 425 of 4 Wheat., 4 L.Ed. 579.

For present purposes it is sufficient to observe the Act of the Legislature of Maryland, there involved, appearing on pages 320 to 322, of 4 Wheat., 4 L.Ed. 579, of the report of the case, laid a direct tax on the activities of the National Bank, held in the same case to be a corporate agency or instrumentality of the Federal Government in the performance of its delegated powers of government. We may add it was such a tax as would naturally provoke the oft-repeated announcement that "the power to tax involves the power to destroy." [4 Wheat. 431, 4 L.Ed. 579.]

The closing paragraph of the opinion reads: "This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional."

But the decision went further, declaring that court was not driven to a determination of what degree of taxation by the states is legitimate, and what decree would amount to an abuse of the power, saying: "We find * * * a total failure of this original right to tax the means employed by the government of the Union, for the execution of its powers. The right never existed."

As a result of the "most deliberate consideration" the court declared its conviction: "That the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government."

Following the lead of M'Culloch v. State of Maryland, supra, later decisions held the salaries of officers and employees of the Federal Government, or its agencies created for the execution of governmental functions delegated by the Constitution to the Federal Government, were immune from taxation by the States. Dobbins v. Erie County, 16 Pet. 435, 10 L.Ed. 1022; New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306.

In recent years, since the States, as well as the Federal Government, look to income taxes as a major source of revenue, and government activities State and Federal have been much increased, the Supreme Court of the United States has, in a series of decisions, reconsidered the question of the immunity of the incomes of citizens of a State, enjoying the protection and benefit of the State Government, from state income taxes, because of the source from

which such income is derived. Thus, in James v. Dravo Contracting Co. 302 U.S. 134, 58 S.Ct. 208, 210, 82 L.Ed. 155, 114 A.L.R. 318, the holding of the court, in majority opinion by Chief Justice Hughes, is summarized in headnote 19, reading: "Nondiscriminatory state gross sales and income tax was collectible from independent contractor holding contract with federal government for construction of locks and dams in navigable streams in state, even if the tax increased the cost to the federal government, since tax was not laid upon the federal government, its officers or property, was not laid upon the contract of federal government, and the tax did not interfere in any substantial way with the performance of federal functions."

The logical basis for such holding and background of judicial decisions are elaborately discussed in the majority and minority decisions in that case. See, also, Atkinson v. State Tax Commission, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621; Silas Mason Co. v. Tax Commission of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187.

Then followed the decision in Helvering, Commissioner of Internal Revenue v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, dealing with immunity of the salaries of officers and employees of a state agency from Federal Income Tax. We are not here concerned with the question of what state activities are essential governmental functions, a problem on which probably the last word is yet to be said.

Then comes the decision in Graves v. New York, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, in which the former decisions holding the salaries of officers and employees of the Federal Government, or of its governmental agencies immune from state income taxes, were overruled. See, also, State Tax Commission v. Van Cott, 306 U.S. 511, 59 S.Ct. 605, 83 L.Ed. 950; O'Malley v. Woodrough, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289, 122 A.L.R. 1379.

■ The present state of the law is well summarized in 27 Am.Jur. 344, § 60, thus: "A state may levy a nondiscriminatory income tax on the salaries of officers and employees of the Federal government or its instrumentalities without imposing an unconstitutional burden upon that government, where Congress has not conferred on such salaries an immunity from state taxation. The earlier rule was to the contrary, but even under the earlier rule, the imposition of a state tax upon net income derived from work done under a contract with the Federal Government was held not to place an unconstitutional burden on that government."

■ The case of Graves v. New York, supra, may be said to set a new milestone in constitutional law. The current law, as announced by United States Supreme Court on federal questions, is as of course the law of this court. What may prove the sounder philosophy in the course of time is not for us to consider.

■ The present holding is: "A tax on income is not legally or economically a tax on its source." 26 U.S.C.A. Int.Rev. Code, p. 53, note 7.

The logical sequences are:

When the funds of the Federal Government have passed into hands of its officers or employees as their personal income, such income becomes subject to a nondiscriminatory income tax by the state whose governmental protection the recipient enjoys.

That the taxpayer is in the performance of governmental functions in earning such income is not the test.

Every public officer is performing government functions. Government can function only through its personnel.

It is unimportant whether the income arises from contract with the government, or is fixed by law. Salaries, as a rule, are fixed by law or by some authority designated by law.

■ If the tax be nondiscriminatory, that is to say, levied at the same rate as on persons deriving their incomes from other sources and enjoying like benefits from the taxing government, the income tax is not prima facie unconstitutional because a burden on the government from which the income is derived.

■ The doctrine of M'Culloch v. Maryland, supra, inhibiting a direct tax on an agency, corporate or otherwise, created by the Federal Government for governmental purposes, remains unquestioned.

This is illustrated by two recent cases. In Graves v. New York, supra, the salary of an officer or employee of the Home Owners' Loan Corporation was held subject to a state income tax.

In Pittman v. Home Owners' Loan Corporation, 308 U.S. 21, 29, 60 S.Ct. 15, 84 L.Ed. 11, 124 A.L.R. 1263, a state recording tax on mortgages was held ineffective as to mortgages held by Home Owners' Loan Corporation because a tax on the activities of a corporate agency through which the National Government performs its governmental functions.

Under which rule is the income here involved to be classed?

■ The Western Railway of Alabama did not come into being as an agency created by the Federal Government. It is a private corporation, devoted to a public service, that of a common carrier. Under the constitutional power to establish post offices and post roads, the Congress has declared railroads to be post roads. Thus, the private corporation is made available for the transportation of the mails, under regulations looking to safeguarding and prompt delivery of the mails, as the Postmaster General or the Congress shall prescribe. Railroads may transport the mails under special contract. If not, their reasonable compensation is determined by government authority; just as are their rates as common carriers.

This compensation, when paid, becomes private income, usable for the corporate purposes for which it was created by the state. These corporate interests have the protection of the state government, the same as individuals.

We are at the conclusion that as regards the immunity of this income from state income tax, the railroad company is to be deemed a servant or employee of the Federal Government.

Such tax is not laid directly on the activities of a government agency, and is not payable from public funds, such as accrue in the operations of some government agencies. Since this income becomes the private funds of the corporation, a private enterprise for gain, although subject to the law of public service corporations, there can be, in our opinion, no logical distinction between this income and the income of Federal officers and employees derived from payment of their salaries.

This brings us to consider whether this compensation for transportation of the mails in 1938 was immune under the construction then given to the Constitution of the United States, and exempted by the Statutes of Alabama, enacted in recognition of such immunity.

Income taxes in Alabama came into being by Amendment No. XXV to the State Constitution, effective in 1933. Skinner's Const. p. 985.

Its purpose and scope are defined therein; its background is matter of recent history. It empowers the levy of a tax "on net incomes from whatever source derived in this State." It makes mandatory a tax on salaries, &c., paid by the State, or an agency thereof, the same as on incomes from other sources.

The statute putting this Amendment into effect exempted "Salaries, wages and other compensation received from the United States by officers or employees thereof, including persons in the military or naval forces of the United States." Acts 1935, p. 406, § 345.10, Subsection (f), Code 1940, Tit. 51, § 384.

It may be said with full assurance that this exemption was incorporated in dutiful recognition that such income was immune from state income tax under the Federal Constitution, and the validity of our income tax amendment depended on writing such immunity into our laws.

This inclusive purpose of necessity covers the exemption of all income derived from the Federal Government subject to the same immunity as the salaries of officers, &c. At the time of the adoption of our income tax amendment, and at the time of passage of the enforcement statute, this income for the carriage of mails was, in our opinion, immune from state income tax, just as the salaries of officers and employees of the Federal Government. The case of Alward v. Johnson, 282 U.S. 509, 51 S.Ct. 273, 75 L.Ed. 496, 75 A.L.R. 9, involving income from the carriage of mails, was expressly differentiated on the ground that the carrier was a contractor, not one in position of an employee.

The decision in Graves v. New York, supra, setting a new milestone in constitutional construction, was rendered March 27, 1939.

Two weeks later, April 12, 1939, the Congress passed an act, which reads: "The United States hereby consents to the taxation of compensation, received after December 31, 1938, for personal service as an officer or employee of the United States, any Territory or possession or political subdivision thereof, the District of Co-

lumbia, or any agency or instrumentality of any one or more of the foregoing, by any duly constituted taxing authority hav-, ing jurisdiction to tax such compensation, if such taxation does not discriminate against such officer or employee because of the source of such compensation." 5 U.S.C.A. p. 22, § 84a.

Note this statute expressly limits such consent to compensation received after December 31, 1938.

Meantime, in anticipation, the Legislature of Alabama passed an act, approved March 2, 1939, Gen.Acts, p. 94, Code 1940, Tit. 51, § 374, which reads: "That the salaries, fees, commissions, or other income of officers or agents of the United States or its agencies and instrumentalities or its contractees, received from the United States or from its agencies and instrumentalities, shall be subject to income taxes levied by the State of Alabama as other income is taxed, but without discrimination, and only to the same extent, and in the same manner other income is taxed, insofar as the State of Alabama is now or hereafter may be constitutionally or legally authorized to tax such income."

This statute does not purport to be retroactive, even if it could be in view of the construction of the Federal Constitution prior to Graves v. New York, supra.

It follows, in our opinion, that the compensation paid the Western Railway of Alabama by the United States for the transportation of mails in 1938 was immune and exempt, not a part of its gross income in computing its net income for state income tax purposes.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.