BENUA, Plaintiff-Appellant, v. COLUMBUS (City), Defendant-Appellee.

Ohio Appeals, Tenth District, Franklin County.

No. 5795.   Decided April 1, 1958.

Willis H. Liggett, Columbus, for plaintiff-appellant.

Russell Leach, City Atty., John W. E. Bowen, Chief Counsel, John C. Young, Senior Asst. City Atty., Columbus, for defendant-appellee.

**OPINION**

By BRYANT, J.

This is an appeal on questions of law and fact from the judgment of the Court of Common Pleas of Franklin County in favor of the defendant-appellee, City of Columbus. Benua filed a petition seeking a declaratory judgment in said Common Pleas Court and at the conclusion of the case all issues were decided against him and in favor of the City of Columbus. Benua filed his notice of appeal and the matter is before this court for determination upon the pleadings, transcript of docket and journal entries, bill of exceptions, certain stipulations, exhibits, papers, briefs and the arguments of counsel.

The questions presented in the petition have to do with the validity of the Columbus ordinance imposing an income tax and particularly with reference to their application to Benua.

In his petition Benua alleges that he is a resident of Bexley, that the City of Columbus is a municipal corporation, that he owns several tracts of real estate, located in the City of Columbus, all of which are rented and for which he is paid the agreed rental periodically as provided in the various leases.

In the amended petition, and by stipulation, the several ordinances having to do with Columbus income tax are made a part of the record in full together with instructions promulgated in connection therewith.

Benua says the City of Columbus insists that he include in his individual tax return to be filed with City Income Tax Division all income received as rent from the said several tracts of land owned by Benua and located within said City. It is Benua's contention that the rent from the said tracts is not subject to the several ordinances enacted by the City of Columbus levying a city income tax, initially one-half of one percent and later increased to one percent.

Benua says and the defendant-appellee admits that he has exhausted his administrative remedies. He further contends the City of Columbus threatens civil and criminal action against him with reference to including said rental income in his city income tax return.

Benua asks for a declaration of his rights and duties and with reference to the said income tax ordinance and said rentals whether or not they are (a) subject to said city income tax; (b) exempt by preemption of the State of the right to tax plaintiff's real estate; (c) exempt by tax statutes enacted by the State; (d) exempt under the Constitution of Ohio and (e) exempt by implication of the statutes and laws of Ohio. He also asks for a permanent injunction against the enforcement of the several city income tax ordinances.

The answer filed by the City of Columbus admits most of the operative facts but denies the legal conclusions.

The record contains the several ordinances having to do with levying of the said Columbus income tax from the time of its first enactment until the filing of the amended petition. The rate (or percentage) imposed is not in controversy. The questions here raised appear to be substantially the same when considered under either the earlier or later forms of the ordinance involved. We shall therefore make reference to the City of Columbus Ordinance 1073-56 passed July 30, 1956 and identified herein as Exhibit E.

Referring to the introductory portion of the ordinance we find that it has for its purpose the levying of a tax "on the net profits earned on all businesses, professions or other activities conducted in the City of Columbus by non-residents." In Section 2 thereof it provides in part as follows:

"* * * there be and is hereby levied a tax at the rate of one (1) per centum per annum upon the following:

"* * * (3) (b) on the net profits earned on and after January 1, 1957 of all unincorporated businesses, professions, or other activities conducted in the City of Columbus by non-residents * * *."

In Section 1 of said ordinance there are definitions which are applicable to the question now before the court. The word, "business," is defined as follows:

"An enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit, whether by an individual, co-partnership, association, corporation, or any other entity "

The words. "net profit," are also defined in said Section 1 as follows:

"The net gain from the operation of a business, profession, or enterprise, after provision for all costs and expenses incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used, and without deduction of taxes based on income."

As before stated, the facts are not in dispute and it is admitted that plaintiff is a nonresident of the City of Columbus residing in another municipal corporation of Franklin County to wit: Bexley. It is likewise admitted that plaintiff is the owner of several parcels of improved or unimproved real estate located in Columbus and is the one entitled to and actually receiving the income therefrom in the form of periodic leasehold rent. It is further not disputed and the plaintiff introduced tax bills to show that a tax upon real property was paid by him as to each of the parcels in question. The principal objection advanced by plaintiff is that the levying of a tax upon the earnings of real estate is identical with a tax upon the real estate itself, and that the city is forbidden to do so because the State has already made such a levy, thereby pre-empting such field to itself. In other words, plaintiff claims that the city is barred from levying an income tax on rental income due to the fact that a tax has already been .levied against real estate in the form of the general property tax and as a result, the State has pre-empted this field of taxation. If this argument by plaintiff be sound, the city might well be without power to levy income tax against such rental income, payable either to nonresidents of Columbus or to owners who are residents of Columbus.

Counsel for Benua places much weight upon a decision of the United States Supreme Court handed down in 1895 in the case of Pollock v. Farmers Loan and Trust Company, 157 U. S. Reports 429. In that case the fifth and a portion of the seventh branches of the syllabus are as follows:

"A tax on the rents or income of real estate is a direct tax, within the meaning of that term as used in the Constitution of the United States.

"So much of the act 'to reduce taxation, * * *' as provides for levying taxes upon rents or income derived from real estate, * * * is repugnant to the Constitution of the United States and is invalid."

The report of the syllabus, facts, arguments of distinguished counsel, opinion of the court, concurring opinion, dissenting opinion, joined in by two Justices, and an additional dissenting opinion of one of them occupy 230 pages in the volume of United States Supreme Court Reports just above referred to.

There are a number of difficulties in applying the Pollock case, supra, to the question now before this court. In the first place, it was an act

of Congress which was being construed and the question decided was that a tax upon the income or rent from land was a direct tax and therefore required to be apportioned among the several States in proportion to the census or enumeration of population. It must be remembered that the decision in the Pollock case, supra, was handed down long before the enactment of the Sixteenth Amendment to the United States Constitution specifically authorizing federal income taxes and in fact was one of the principal reasons why it was necessary to enact the so-called income tax amendment. In handing down the Pollock decision, supra, the United States Supreme Court relied upon language found in the Constitution of the United States, Article I, Section 9, which provides in part as follows:

"No capitation, or other direct tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken."

The income tax before the court in 1895 was not apportioned among the States on the basis of population and, being a direct tax, the court had no difficulty in finding it in conflict with the language of the said Article I, Section 9.

No question of pre-emption or the right of a State. to levy an income tax or the right of a municipal corporation to levy an income tax was before the court in the Pollock case, supra.

The effect of· the decision in the Pollock case, supra, was nullified when in 1913 the several states in the United States adopted the so-called income tax or Sixteenth Amendment to the Constitution of the United States reading as follows:

"The Congress shall have power to lay and collect taxes on income, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

Thus it will be seen that the constitutional foundation for the Pollock case, supra, is now completely gone. Furthermore, at least so far as the levying of a tax by a state is concerned, the United States Supreme Court in 1937 announced a decision arriving at a different result and said by it to distinguish the Pollock case, supra. This was the case of New York ex rel. Cohn v. Graves et al., 300 U. S. Reports 308, in which a taxpayer residing in the State of New York challenged the right of that State by a State Income Tax Law to tax rental income arising from land located outside of the State of New York but payable to the New York resident as the owner thereof. Said taxpayer also objected to paying New York Income Tax upon interest received by said taxpayer on bonds which were not within the State of New York and which were secured by mortgages upon land also outside the State of New York. Branches one to six, inclusive, of the syllabus in the said Graves case, supra, are as follows:

"1. A State may tax her citizen upon the income he receives by way of rents from lands situate in another State and by way of interest on bonds secured by mortgage on lands situate in another State. P. 312, 316

"2. The receipt of income by a resident is a taxable event. P. 312.

"3. Domicil itself affords a basis for such taxation. · P. 313.

"4. Enjoyment of the privileges of residence in the State and the

attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. Id.

"5. Neither the privilege nor the burden is affected by the character of the source from which the income is derived. For that reason income is not necessarily clothed with the tax immunity enjoyed by its source. Id.

"6. A tax on the income from land is not a tax on the land (Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, distinguished), and taxation of both, by the same or different States, is not double taxation. P. 314."

Thus, it will be seen that the persuasive force of the Pollock case, supra, is practically nil at this time.

There has been a great amount of litigation involving the many questions arising under federal and state income tax laws and local ordinances. In the early days of income taxes the argument frequently was advanced that all income is a form of property and hence that constitutional provisions in the several states limiting the rate or amount of taxation on property were applicable to income taxes. It also was argued and sometimes decided that income taxes were required to be considered along with other taxes in determining whether the limits upon taxation had been exceeded. In a great majority of the cases examined, such theories are rejected. See Opinion of Justices (N. H.— 1915), 77 N. H. 611, that a tax on income is not a tax on property, and a multitude of cases annotated in 11 A. L. R. 313, 70 A. L. R. 468 and 97 A. L. R. 1488. In the overwhelming majority of cases cited, a clear distinction has been recognized between taxes on land and on the rent or income from land. For further discussion as to what are property taxes, see 103 A. L. R. 18.

Further considering the question in general of the right to tax non-residents under a state income tax statute, the rule is stated in 15 A. L. R. 1329 as follows:

"State statutes imposing a tax upon incomes of nonresidents earned or accruing within the taxing states have been upheld as against practically all constitutional objections which have been raised.

"It has been held that a state may, consistently with due process of law, impose an annual tax upon the net income derived by nonresidents from property owned by them within the state, and from any business, trade, or profession carried on by them within its borders."

In a supplemental annotation in 90 A. L. R. 486 with reference to state statutes, it is said:

"A state may constitutionally impose a tax upon the net income of a nonresident derived from property owned and business carried on in the taxing state."

Again in 156 A. L. R. 1373 (1945) in a supplemental annotation referring to state statutes, it is said:

"Nonresident individuals may be subjected to a state tax on income earned within the state, Atkinson v. State Tax Commission (1937) 156 Or 469, 67 P (2d) 161 (reversing on rehearing (1936) 156 Or 461, 62 P (2d) 13, affirmed in (1938) 303 US 20, 82 L. ed. 621, 58 S. Ct. 419); Scobie v. Wisconsin Tax Commission (1937) 225 Wis. 529, 275 NW 531. A state

may impose an income tax on nonresident individuals in respect of income derived from business or property located in the taxing state or from services performed there."

Coming now to the question of the power of a municipal corporation to levy a tax upon property within its limits, it is stated in 38 Am. Jur. 78, Municipal Corporations, §389:

"It is well settled that a municipality which has been given the power of taxation by the legislature has the power to subject all property within the corporate limits to municipal taxation."

Further, in the same authority at page 79, §390, it is said:

"It is now almost universally held that property within the limits of a municipal corporation is subject to municipal taxation, even if it is so situated that it cannot and does not derive any benefit from the expenditure of the money so raised."

There can no longer be any question in Ohio as to the power of municipal corporations to levy an income tax. In 1944 Williams, J., in a concurring opinion in **State, ex rel. v. Sherrill, 142 Oh St 574, at page 583** stated:

"The power of a municipality to adopt an excise exists so long as the state has not invaded or pre-empted this particular field by passing a law providing for the same kind of excise. See **State, ex rel. Zielonka, City Solicitor, v. Carrel, Auditor, 99 Oh St 220, 124 N. E., 134; City of Cincinnati v. American Telephone & Telegraph Co., 112 Oh St 493, 147 N. E., 806; Firestone v. City of Cambridge, 113 Oh St 57, 148 N. E., 470.** Compare **Hall v. Industrial Commission, 131 Oh St 416, 3 N. E. (2d), 367."**

This, of course, was directly contrary to a statement in a case decided much earlier. See **State, ex rel. Zielonka, City Solicitor, v. Carrel, Auditor, 99 Oh St 220,** where at page 228 the court said:

"It may be said in this connection that it is clearly to be implied from the constitution that municipalities are without power to levy an income or inheritance tax."

Another landmark in the field of municipal income taxation is the case of **Haefner, et al. v. City of Youngstown et al., 147 Oh St 58,** where an ordinance of the City of Youngstown was invalidated. Said ordinance sought to levy a tax of two and one-half percent upon the net rate charged for certain public utility services including natural gas, electricity, water and telephone.

The ordinance was held unconstitutional under the doctrine of pre-emption. The opinion stated that the state already had levied a tax on the gross receipts of utility companies and that this had the effect of pre-empting this field of taxation in favor of the state and deprived municipalities of the right to enter such field.

As to the general power of municipalities to levy such taxes within limits, syllabus three of the Haefner case, supra, provides as follows:

"3. Municipalities have power to levy excise taxes to raise revenue for purely local purposes; but under **Section 13, Article XVIII, Ohio Constitution,** such power may be limited by express statutory provision or by implication flowing from state legislation which pre-empts the field by levying the same or a similar excise tax."

Williams, J., in course of the opinion in the Haefner case, supra, states categorically there is no express grant of taxing power to municipalities so to do. At pages 60 and 61, he wrote as follows:

"The power to tax has not been expressly conferred upon municipalities and, were there no binding precedents, the question as to the existence of any such power would present some difficulty, as was pointed out by Judge Robinson in City of Cincinnati v. American Telephone & Telegraph Co., 112 Oh St 493, 147 N. E., 806."

Directly bearing upon the question of taxing of a nonresident is the case of Angell v. City of Toledo, et al., 153 Oh St 179. This case involved the question of the power of the City of Toledo to levy an income tax upon a nonresident who worked in and was paid in the City of Toledo. The decision of the court held that Toledo had such power and there was no valid objection, either pre-emption or otherwise, to the assessment and collection of said tax against such a nonresident. The court also approved the withholding features of the Toledo ordinance.

The court in course of the opinion was careful to limit its holding to the two express questions above set forth. As to the question of nonresidence of the plaintiff, the court points to the benefits accruing to both plaintiff's employer and plaintiff while at work resulting from services furnished by the City of Toledo. At page 185 of the opinion by Turner, J., it is stated:

"The municipality certainly does afford protection against fire, theft, et cetera, to the place of business of plaintiff's employer and the operation thereof without which plaintiff's employer could not as readily run its business and employ help. In other words, the city of Toledo does afford to plaintiff not only a place to work but a place to work protected by the municipal government of Toledo."

One of the more recent cases, where the pre-emption doctrine is upheld is the Ohio Finance Co. v. City of Toledo, 163 Oh St 81, decided March 23, 1955 by a four to three decision. In that case the syllabus is as follows:

"In view of the provisions of the state tax laws, providing generally for a tax against the owner of 5 per cent on the income yield from his intangibles but then providing for taxation of the shares of a dealer in intangibles at 5 mills of their fair value and further providing that such latter tax should be in lieu of all other taxes on property such as intangibles owned by such a dealer, a municipality may not impose an income tax on such portion of the net profits of such a dealer as are derived from the income yield of intangibles owned by such dealer."

It was stated that the Ohio Finance Co. was engaged principally in making small direct loans to borrowers, taking in return interest-bearing promissory notes and purchasing from mercantile establishments interest-bearing promissory notes representing the unpaid purchase price of articles sold by such merchants to their customers.

The Common Pleas Court had held in favor of the finance company but was reversed by the Court of Appeals on the ground that the tax imposed by the State law in the shares of stock in the finance company is essentially a property tax and not a direct income tax. This decision

of the Court of Appeals was reversed by the Supreme Court of Ohio upon the ground that under the doctrine of pre-emption, levying of a state tax, either on income or value of intangibles and expressly exempting them from other taxes, barred the city from levying its income tax against plaintiff. Zimmerman, J., in a strong dissenting opinion in the Ohio Finance Company case, supra, starting at page 86, disagreed with the majority of the court and his dissenting opinion is concurred in by Hart and Matthias, JJ. Whether or not there has been a pre-emption is admittedly a question difficult to determine in some cases.

A number of income tax cases discuss allegedly discriminatory features such as granting exemptions to corporations having their principal places of business inside the city from profits earned outside the city, while the income of residents of the same city whose earnings come from outside the city limits are not exempted. See City of Springfield v. Krichbaum, 88 Oh St 329, the second branch of the syllabus reading as follows:

"2. A municipal ordinance levying an income tax is not discriminatory by reason of a provision therein that corporations having a principal place of business within the city are exempt on that portion of their income earned outside the city, whereas individuals residing in the city and earning wages elsewhere are not so exempt."

The taxpayer in that case attempted to raise the question as to the right of said city to tax his earnings where the employment was outside the city but the court held the question was not properly raised by the pleadings.

The principal questions before us have to do with the power of Columbus to tax income from land and improvements within said city and if it has such power whether it can be made to extend to the income arising from land and improvements thereon inside the city limits where the owner is a nonresident of Columbus.

Many decisions by courts within Ohio and elsewhere have been reviewed. One of the most enlightening discussions of the power to tax incomes from the standpoint of the State and political subdivisions thereof, as limited by the residence or nonresidence of the taxpayer inside the boundaries of the taxing authority and particularly as to income on property inside a municipality owned by a nonresident taxpayer, may be found in Cooley's "The Law of Taxation," Volume I (Fourth Edition). At page 218 thereof, it is stated:

"The political jurisdiction of a state does not extend beyond its territorial limits, and therefore it cannot lawfully impose taxes upon persons, natural or artificial, or property, residing or situated beyond such limits. A state cannot tax where it has jurisdiction over neither the owner nor the property. In such a case the state affords no protection, and there is nothing for which taxation can be equivalent. But it is not necessary that both person and property should be within the jurisdiction in order to be taxable: It is sufficient if either is, subject to the rules as to taxable situs laid down in another chapter. If tangible property is within the jurisdiction, so as to acquire a taxable situs therein, the residence of the owner is immaterial. For instance, all

real estate of a nonresident is taxable where it lies, though the tax will be a lien upon the land only, and cannot be made a personal charge upon the nonresident owner. So in case of intangible personal property which is taxable where the owner resides, the location of the written evidences of such property outside the state is no bar to taxing such property. * * *." (Emphasis added.)

There is admittedly a dearth of authority in Ohio upon the precise question now before this court. It is our opinion that based upon fairness, reasonableness and logic, there is no reason why the income from property owned by a nonresident located within the city should not be taxed exactly the same as it would be if the title were held by a resident of Columbus.

As stated by Cooley (see extract above):

"* * * it is not necessary that both person and property should be within the jurisdiction in order to be taxable; it is sufficient if either is, subject to the rules as to taxable situs * * *."

The benefit of local government to a piece of real property, whether improved or unimproved, which is located within a municipality, is real and substantial. It is neither diminished nor enhanced by the fact that the owner resides outside the city.

An acre of ground located near the center of a great metropolis usually is worth many times that of an acre of ground located in a sparsely populated or inaccessible area. The difference is the population, trade, commerce restrictions, protection and the many other things which make up a municipality, some benefits and some burdens. The exemption of an individual or class within a taxing district from taxation has the effect of increasing the tax burden of those not exempt.

For the reasons above set forth this court agrees with the conclusions reached by Judge Gessaman in the court below, and coming to answer the prayer of plaintiff for a declaratory judgment upon five specific questions set forth in the amended petition, is of the opinion as follows:

(a) That rents received by plaintiff, a nonresident, from real estate located within the City of Columbus are subject to the Columbus Income Tax;

(b) That said rents are not exempt from said tax by reason of pre-emption by the State of Ohio and the right to tax plaintiff;

(c) That said rents are not expressly nor otherwise exempt from said tax by the statutes of the State of Ohio;

(d) That said rents are not exempt from said tax by virtue of the Constitution of the State of Ohio, and

(e) That said rents are not exempted from said tax by implication of the statutes and laws of the State of Ohio.

Further, that the prayer of the plaintiff for a permanent injunction against the enforcement of the Columbus Income Tax be and the same hereby is denied.

PETREE, PJ, MILLER, J, concur.