401 P.2d 443

**Ervin G. RICHARDSON, Plaintiff and Appellant,**

**v.**

**Warden John W. TURNER, Defendant and Respondent.**

No. 10164.

Supreme Court of Utah.

May 7, 1965.

Sumner J. Hatch, Robert M. McRae, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice.

Plaintiff appeals from an order of the lower court denying his petition for writ of habeas corpus. He is now incarcerated in the state prison after having pled guilty to a charge of indecent assault. Plaintiff's only ground for relief from his confinement is that Dugway Proving Grounds, located in Tooele County, Utah, where the alleged crime took place, is a military reservation under the exclusive jurisdiction of the federal government, and, therefore, the State of Utah was without jurisdiction to prosecute him.

It was stipulated in the court below that the area of land in question was never owned by the State of Utah, but was a part of the federal public domain at the time of statehood. It remained in this status until 1950, when the secretary of interior withdrew it from public appropriation for use by the Department of Army for military purposes. It was further stipulated that the land, at the time of the alleged crime, was being used as a part of a military reservation.

The trial court, in denying plaintiff's petition, found that the area involved "never had a legislative jurisdiction ceded from the State of Utah, nor has the Governor or other officials of the State of Utah filed or executed a deed of cession. * * *" It further found that the subject lands were dedicated to military uses by withdrawal from the public domain, and that at no time has the United States formally accepted exclusive jurisdiction from the State of Utah, nor has the latter ever purported to transfer such jurisdiction.

█ Exclusive jurisdiction over lands situated within the boundaries of a state vests in the United States in one of three ways:

(1) Transfer of jurisdiction pursuant to Article I, Section 8, Clause 17 of the United States Constitution;[1]

1. "To exercise exclusive legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the acceptance of Congress, become the seat of Government of the United States, and to exercise like Authority over all Places *purchased* by the Consent of the Legislature of the State in which the same shall be, for the erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." (Emphasis added.)

(2) By cession from the state to the federal government and proper acceptance and notification by the latter;[2] and

(3) Reservation by the federal government upon admission of a state into the Union.[3]

In plaintiff's brief, it is implied, if not admitted, that the instant situation does not fall precisely within any of the foregoing three methods whereby exclusive jurisdiction might vest in the United States Government. As to (1), there is no purchase by the United States which has always held the proprietary interest in the lands involved. As to (2), there is no evidence of a cession from the State, deeds of cession, or acceptance by the United States of exclusive jurisdiction. As to (3), there is no evidence that exclusive jurisdiction was reserved by the United States at the time of statehood and, further, the lands were not being used for military purposes at the time of statehood.

■ However, plaintiff argues that inasmuch as the proprietary interest in the land involved has always been in the United States, the action of the Department of Interior in withdrawing it from the public domain to be used as a military reservation is sufficient evidence and basis to conclude that it should be deemed under the exclusive jurisdiction of the federal courts.

The foregoing argument is untenable. It must be conceded that the State had criminal jurisdiction over the land prior to its withdrawal for military purposes. The mere change of the use of federal lands from nonmilitary to military could not automatically confer upon the federal government exclusive jurisdiction. Certainly, if the United States had acquired the land .after statehood by purchase, cession, condemnation or otherwise, there would have to be a consent upon the part of the State to exclusive jurisdiction and an acceptance thereof by the United States.[4]

Plaintiffs rely heavily upon the Tully cases.[5] These cases are not in point. They involved a situation where the Fort Missoula Military Reservation was created prior to statehood and the Montana Constitution expressly relinquished jurisdiction over the reservation. The Montana

2. 40 U.S.C.A. § 255; 50 U.S.C.A. § 175.
3. Recognized in Fort Leavenworth R. R. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885).
4. Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187 (1937); Atkinson v. State Tax Comm. of Oregon, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621 (1938); Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943); People v. Sullivan, 151 Colo. 434, 378 P.2d 633 (1963); 22 C.J.S. Criminal Law § 139, p. 373; 91 C.J.S. United States § 7, p. 22.
5. State v. Tully, 31 Mont. 365, 78 P. 760 (1904) and United States v. Tully, 140 F. 899 (C.C.D.Mont.1905).

**374**

State Supreme Court held that the federal government had exclusive jurisdiction, but, subsequently, the federal district court reached an opposite conclusion.

Affirmed. No costs awarded.

HENRIOD, C. J., and McDONOUGH, CROCKETT, and WADE, JJ., concur.