**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50175 |
| Plaintiff-Appellee, | D.C. Nos. 5:17-cr-00103-DMG-2 5:17-cr-00103-DMG |
| v. | |
| ERIC BANKS, AKA Daniel Ulices Acevedo, AKA Eric Perry, AKA Lamar Sterling Perry, AKA Perry Lamar Sterling, AKA Latrell White, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50323 |
| Plaintiff-Appellee, | D.C. Nos. 5:17-cr-00103-DMG-1 5:17-cr-00103-DMG |
| v. | |
| VERNON WHITE, AKA Marquette Adams, AKA Billy Edwards, AKA Slim, AKA Jamir Williams, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted July 14, 2022
Pasadena, California

Before: BENNETT and KOH, Circuit Judges, and KATZMANN,[**] Judge.
Concurrence by Judge KOH

Defendants-Appellants Eric Banks and Vernon White, inmates at the United States Penitentiary in Victorville, California (USPV), raise several arguments challenging their convictions under 18 U.S.C. § 113(a)(3) and (a)(6) for assaulting another inmate. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1.      Banks argues that we should dismiss the indictment because his Speedy Trial Act rights were violated.[1] But the "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under [the Speedy Trial Act]." 18 U.S.C. § 3162(a)(2). Banks never moved to dismiss before trial, and he therefore waived any right to dismissal under the Speedy Trial Act. Banks's argument that a defendant's mere assertion of his speedy trial rights is sufficient to preserve a Speedy Trial Act claim is foreclosed by our precedent. *See United States v. Tanh Huu Lam*, 251 F.3d 852, 858 n.9, 860–61 (9th Cir. 2001) (holding that, even though the defendant had repeatedly

---

[**]     The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

[1] We grant Banks's unopposed motion to take judicial notice of district court dockets and filings in two other cases, which support his Speedy Trial Act claim. Dkt. No. 15.

asserted a desire for a speedy trial, he waived his Speedy Trial Act claim because he failed to file a motion to dismiss until after his trial).

2. White argues that the district court erred by precluding him from presenting a duress defense. "We review the district court's decision to exclude the duress defense de novo." *United States v. Chi Tong Kuok*, 671 F.3d 931, 947 (9th Cir. 2012). The district court did not err because White failed to make a prima facie showing of an immediate, specific threat, which is a necessary element of duress. *See id.* at 947–48; *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). White presented no evidence of any specific threats. He offered only generic, undetailed evidence that gangs usually assault those who refuse to carry out orders. Such evidence is insufficient. *See Chi Tong Kuok*, 671 F.3d at 948 ("[V]ague and undetailed threats will not suffice.").

3. Banks argues that the district court abused its discretion in conducting voir dire by failing to adequately test for bias against prisoners. We disagree because the record shows that the voir dire as a whole was reasonably sufficient to test for bias against prisoners. *See United States v. Powell*, 932 F.2d 1337, 1340–41 (9th Cir. 1991); *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). Indeed, defense counsel for White asked several questions that were specifically aimed at eliciting bias against prisoners.

4. For the first time on appeal White challenges the jury instruction on

3

the jurisdictional element of the charged offenses.  Both charged offenses required the government to prove that the assault occurred "within the special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 113(a)(3), (a)(6).  White waived his challenge because (1) he and the government jointly proposed the instruction he now challenges; (2) the basis for his challenge—the plain statutory text of the charged offenses—existed before he submitted the proposed instruction; and (3) he was aware of the statutory text because the indictment referenced the charged offenses and recited the statutory text that White now claims was improperly omitted.  *See United States v. Cain*, 130 F.3d 381, 383–84 (9th Cir. 1997).  Even if White did not waive his challenge, it would fail because the instruction on the jurisdictional element was proper under *United States v. Read*, 918 F.3d 712 (9th Cir. 2019).  *See United States v. Hong*, 938 F.3d 1040, 1046 (9th Cir. 2019).

5.     Defendants argue that the evidence was insufficient to establish that USPV was within the special maritime and territorial jurisdiction of the United States.  *See* 18 U.S.C. § 113(a); *id.* § 7.  *Read* forecloses Defendants' challenge because the government here offered precisely the type of uncontroverted testimony that the *Read* court held was sufficient.  *See Read*, 918 F.3d at 718.  Two officers who responded to the attack testified that they worked for the Federal Bureau of Prisons at USPV.  Another officer testified that he worked for the

4

Bureau of Prisons at USPV at the time of the attack. All three officers testified that the attack occurred on the field at USPV. Defendants' reliance on *United States v. Redmond*, 748 F. App'x 760 (9th Cir. 2018), is unconvincing because they rely on the *dissent* in the *unpublished* disposition. Finally, as a three-judge panel bound by *Read*, we are compelled to reject Defendants' arguments that *Read* was wrongly decided and that we should follow *United States v. Davis*, 726 F.3d 357 (2d Cir. 2013). *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).[2]

6.      Banks claims he was tried and punished in violation of the Double Jeopardy Clause because he had already been adjudicated and punished for the same conduct in a Bureau of Prisons proceeding. But as Banks correctly concedes, his argument is foreclosed by *United States v. Brown*, 59 F.3d 102, 103 (9th Cir. 1995) (per curiam).

7.      Banks argues for reversal based on the cumulative effect of the alleged errors. But because he has identified no error, there was no cumulative error. *See United States v. Martinez-Martinez*, 369 F.3d 1076, 1090 (9th Cir. 2004).

**AFFIRMED.**

---

[2] Because it is unnecessary, we do not reach whether Defendants waived their sufficiency of the evidence challenge by arguing during closing that they were guilty of the lesser included offense of simple assault or whether we may take judicial notice that USPV is within the special maritime and territorial jurisdiction of the United States.



*United States v. Banks*, 20-50175; *United States v. White*, 20-50323

KOH, Circuit Judge, concurring:

I join the memorandum disposition because I agree that *United States v. Read*, 918 F.3d 712 (9th Cir. 2019), controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (a three-judge panel cannot overrule Ninth Circuit precedent in the absence of an intervening Supreme Court decision). I write separately because I believe that *Read* was incorrectly decided and that we should reconsider *Read* in a future case.

The Enclave Clause of the United States Constitution imposes limits on federal jurisdiction over federally owned land acquired from a state. *See* U.S. Const., art. I, § 8, cl. 17. Here, defendants were convicted of assaulting another inmate in federal prison, in violation of 18 U.S.C. § 113(a). Section 113(a) contains a jurisdictional element, which requires that the government prove the offense occurred "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 113(a).

Consistent with the Enclave Clause, 18 U.S.C. § 7(3) defines the "special maritime and territorial jurisdiction of the United States" as:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

1

*Id.* § 7(3).

Accordingly, proving the existence of federal jurisdiction over land acquired from a state requires clearing two hurdles. First, the federal government must show that the state agreed to the transfer of jurisdiction, usually through consent or cession.[1] *See, e.g.*, *Kleppe v. New Mexico*, 426 U.S. 529, 542-43 (1976) ("Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory . . . .").

Second, the federal government must show that it accepted the jurisdiction from the state. *See Atkinson v. Tax Comm'n*, 303 U.S. 20, 23 (1938). For lands acquired prior to 1940, the federal government's acceptance of jurisdiction is presumed. *Id.* However, for lands acquired after 1940, there is a *conclusive* presumption *against* the federal government's acceptance of jurisdiction. *See* 40 U.S.C. § 3112(c); *see also Adams v. United States*, 319 U.S. 312, 313-15 (1943).

The upshot here is that federal ownership of land alone does not establish federal jurisdiction. As such, "one cannot simply assume that a federal installation

---

[1] Cession occurs when the state cedes jurisdiction over territory to the federal government through legislation and usually arises when the federal government has not purchased the land or the transfer of jurisdiction occurred after the purchase. *See, e.g.*, *Fort Leavenworth Railway Co. v. Lowe*, 114 U.S. 525, 526 (1885) (finding the federal government had jurisdiction over Fort Leavenworth despite not purchasing the underlying land).

on federal land automatically comes within Federal jurisdiction." *United States v. Davis*, 726 F.3d 357, 366-67 (2d Cir. 2013) (cleaned up).

Indeed, numerous courts across the country have concluded that mere evidence of a federal installation on federally owned land is insufficient to show federal jurisdiction. *See, e.g.*, *United States ex rel. Greer v. Pate*, 393 F.2d 44, 45-47 (7th Cir. 1968) (post office); *DeKalb Cnty., Georgia v. Henry C. Beck Co.*, 382 F.2d 992, 994-96 (5th Cir. 1967) (Veterans Administration hospital); *United States v. Williams*, 17 M.J. 207, 211, 215 (Ct. Mil. App. 1984) (federal military base).

Yet that is precisely what we did in *Read*. Notwithstanding a conclusive presumption against federal acceptance of jurisdiction over land acquired after 1940,[2] in *Read* we relied solely on the trial testimony of government witnesses. Specifically, we held that mere prisoner testimony that "he was an inmate 'of the Phoenix federal prison' at the time of the assault," in conjunction with prison guard testimony that "he worked at the Federal Bureau of Prison's male facility in Phoenix, and was employed by the United States Department of Justice, Federal Bureau of Prisons," was sufficient to prove *beyond a reasonable doubt* that the federal prison was under federal jurisdiction, *Read*, 918 F.3d at 718.

---

[2] The government conceded in their brief that the presumption applied. *See United States v. Read*, No. 17-10439, ECF No. 32 (9th Cir. Aug. 23, 2018).

Recall that the government must prove, whether to the judge or the jury,[3] that the state agreed to, and the federal government accepted, the transfer of jurisdiction. A prisoner or employee's testimony about the location of the assault fails to prove either state agreement to transfer, or federal government acceptance of, jurisdiction *beyond a reasonable doubt. See Davis*, 726 F.3d at 364 (employee testimony that assault took place in a federal prison insufficient to prove that the federal government had jurisdiction over the prison). Indeed, *Read* fails to explain why such testimony is sufficient to rebut the conclusive presumption against federal government acceptance of jurisdiction for federal lands acquired after 1940.

My concern is not hypothetical. Because proving state agreement and federal acceptance is often complex, federal courts can get the jurisdictional analysis wrong. For example, in *United States v. Hernandez-Fundora*, 58 F.3d 802 (2d Cir. 1995), the defendant was convicted of § 113 assault in Raybrook federal prison. *Id.* at 804. The Second Circuit rejected the defendant's jurisdictional challenge

---

[3] *Read*'s holding that "[t]he existence of federal jurisdiction over the place in which the offense occurred is an element of the offenses defined at 18 U.S.C. § 113(a), which must be proved to the jury beyond a reasonable doubt," appears to implicitly overrule prior Ninth Circuit decisions holding that the existence of federal jurisdiction is a legal question determined by the district court. *See, e.g., United States v. Warren*, 984 F.2d 325, 327 (9th Cir. 1993) (explaining that the "existence of federal jurisdiction over the geographic area" is a question of law and "the locus of the offense within the area" is a question of fact); *see also United States v. Mujahid*, 799 F.3d 1228, 1237 (9th Cir. 2015). I do not address this issue here because, in either circumstance, the government still bears the burden to prove its case.

because an FBI agent testified at trial that the federal government had jurisdiction over the prison. *Id.* at 808-10. However, after the Second Circuit vacated the conviction on other grounds, the government discovered on remand that the prison was not subject to federal jurisdiction because the underlying land was acquired after 1940, and New York withheld consent. *Davis*, 726 F.3d at 366 n.5.

Moreover, our Court has expressed differing views about the jurisdictional status of United States Prison Victorville, the prison in the instant case. Judges Wardlaw and Bybee previously concluded the government had federal jurisdiction over Victorville. *See United States v. Redmond*, 748 F. App'x 760, 761-62 (9th Cir. 2018). However, Judges Berzon, Bea, Ikuta, and Ngyuen have expressed doubt. *Id.* at 762-63 (Ikuta, J., dissenting); *United States v. Redmond*, No. 21-55142, 2022 WL 1658445, at *2 (9th Cir. May 25, 2022).

At bottom, the Constitution requires that the government "prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *United States v. Perlaza*, 439 F.3d 1149, 1171 n.24 (9th Cir. 2006) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)); *see also United States v. Gaudin*, 515 U.S. 506, 510 (1995). Our decision in *Read* acknowledges the government's burden to prove "[t]he existence of federal jurisdiction over the place in which the offense occurred . . . to the jury beyond a

5

reasonable doubt," 916 F.3d at 718, but excuses the government from being held to its proper burden.

I would therefore encourage the Court to reconsider *Read* in an appropriate case.